MARY E. FARNHAM AND ANOTHER v. KASPAR KNOBEL.[1]

December 20, 1929.

No. 27,594.

G. H. Smith and E. L. Tong, for appellant.
Keyes, Pardee & Solether, for respondents.

TAYLOR, C.

This is another of the so-called "Lane cases." John A. Lane was engaged in business as a mortgage loan broker for many years. He became insolvent in 1927. It was then discovered that in many instances money paid to him to be applied on mortgages which he had negotiated had never been so applied but had been retained by him. Much litigation followed to determine whether under the facts of a particular case the loss should fall on the mortgagor or the mortgagee. This is such a case. Statements of the facts and of the conclusions reached in prior cases will be found in Madsen v. Miller, 176 Minn. 55, 222 N. W. 581; Johnson v. Howe, 176 Minn. 287, 223 N. W. 148; Anderson v. Goetze, 176 Minn. 399, 223 N. W. 459; McCart v. Schreiber, 176 Minn. 496, 223 N. W. 779; Sonner v. Goetze, 177 Minn. 108, 224 N. W. 697; Wittles v. Howe, 177 Minn. 119, 224 N. W. 696; Farnham v. Goldberg, 178 Minn. 613, 228 N. W. 166. The results reached vary according to the facts as found in each particular case.

[1]Reported in 228 N. W. 346.

In 1917 plaintiffs applied to Lane for a loan of $1,500 to be secured by a mortgage on certain real estate in the city of Minneapolis. Lane submitted the proposition to defendant, a farmer living a few miles from the city. Defendant looked at the property and consented to make the loan. Lane prepared the necessary papers. Plaintiffs executed them and left them with him. Lane delivered them to defendant, received the money and turned it over to plaintiffs. In 1921 Lane told plaintiffs that defendant wanted the mortgage paid and that he could obtain the money to pay it from another party who was willing to make a loan on the property. Plaintiffs told him to do so and pay it. The new mortgage was executed and given to Lane, and he delivered it to the new mortgagee and received the money. This mortgage was for $1,300, and plaintiffs gave Lane the other $200 in cash. Lane did not have the old mortgage or the note nor a satisfaction of them, but gave plaintiffs a receipt that the loan had been paid. Plaintiffs accepted the receipt without making any inquiry concerning the note or mortgage or a satisfaction of them. Defendant had no knowledge of this transaction. Lane kept the $1,500 and thereafter paid defendant the interest on defendant's mortgage as it accrued out of his own funds until he ceased doing business.

The trial court found that Lane received the $1,500 as the agent of defendant and directed that defendant's mortgage be adjudged paid and satisfied. Whether the above finding is justified by the evidence is the question presented. To determine this question it is necessary to consider the relations existing between defendant and Lane and the manner in which the business between them had been conducted.

In 1912 Lane had an application for a loan of $1,000. He was introduced to defendant by a friend and asked defendant to make the loan. At the same time he explained to defendant how he handled loans—that he looked after the recording of the papers, the insurance, the sending out of notices when payments were due, the collecting of interest, and all matters connected with the loan without charge to the party loaning; and that the payments would be made through his office. After looking at the property defendant

agreed to make the loan. The papers were executed by the mortgagor and delivered to Lane, and he delivered them to defendant and received the money. Thereafter defendant made four other loans in the same manner, one of which was the loan to plaintiffs. All were payable at Lane's office. In each instance defendant himself determined whether he would make the loan but took Lane's report upon the title to the property without further examination. Lane collected the interest as it became due without having either the note or the mortgage in his possession and paid it over to defendant. Plaintiffs' mortgage was paid to Lane as previously stated. One of the other mortgages was paid when the owners sold the land to a third party. Defendant states that to complete the sale they came to his house and paid the full amount of the mortgage to him and that he gave them the papers together with a satisfaction. Lane testified that an entry on his books indicated that a payment of $500 on this mortgage had been made to him but that he had no personal recollection of the matter. Lane collected none of the principal on any of the others, but the record does not show that they have been paid.

Defendant dealt wholly with Lane and never had any direct communication with the mortgagors, although, except in one instance, he went and looked at the property before making the loan. He expected the payments to be made at Lane's office and expected Lane to collect the interest, and when interest became due went to Lane and got it. At the trial defendant stated that the note for the first loan was payable at Lane's office, and then this followed:

Q. "So you expected that you would get your money from Mr. Lane?

A. "Yes.

Q. "I am showing you plaintiff's exhibit A. Is that the note that you got in connection with the Farnham [plaintiffs'] mortgage?

A. "Yes, sir.

Q. "And you understood when you made that loan that the payments on that note were to be made to Mr. Lane?

A. "Yes.

Q. "And where did you go to get the interest on the Farnham mortgage?

A. "To Mr. Lane.

Q. "You never went to Mr. or Mrs. Farnham for it, did you?

A. "No."

Considering the above testimony in connection with the explanation made to defendant concerning the manner in which his loans would be handled, we are unable to say that the trial court could not legitimately infer that Lane had authority to collect the principal as well as the interest.

It follows that the order denying a new trial must be and therefore it is affirmed.